Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, ORm 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiff
CANDACE QUINN *et al.*

## UNITED STATES DISTRICT COURT

### IN AND FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| CANDACE QUINN, An Individual; TAMARA L. DOBSON COTTON, An Individual; and CAMILLE D. HARRIS, An Individual,<br><br>Plaintiffs,<br><br>v.<br><br>LEGACY HEALTH, A Public Benefit Corporation, and DOES 1 THROUGH 50, Inclusive,<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a), AND AIDING AND ABETTING RELIGIOUS DISCRIMINATION [ORS 659A.030(1)(g)]**<br><br>**JURY TRIAL REQUESTED** |

    Plaintiffs CANDACE QUINN, TAMARA L. DOBSON COTTON, and CAMILLE D. HARRIS hereby allege as follows:

## PARTIES

    1.    Plaintiffs are, and at all times herein were, "healthcare providers and healthcare staff," as defined by Or. Admin. R. 333-019-1010(2)(f), who were employed at various hospitals operated in Oregon by Defendant LEGACY HEALTH ("LEGACY") before October 19, 2021.

2.    Plaintiffs also are, and at all times herein were, religious practitioners from varying denominations who, as permitted under Or. Admin. R. 333-019-1010(3)(a), sought from LEGACY religious exemptions from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19. Not only did LEGACY deny all three Plaintiffs religious exemptions, LEGACY placed Plaintiffs on unpaid administrative leave on or about October 1, 2021 and fired them on or about October 19, 2021 for declining to receive COVID-19 vaccines in accordance with their sincerely held religious beliefs.

3.    Defendant LEGACY is, and at all times herein was, a non-profit public benefit corporation headquartered in Portland, Oregon. *See* Attached **Exhibit "A"** [a true and accurate copy of LEGACY's proof of registration from the Oregon Secretary of State's website]. LEGACY operates hospitals and healthcare clinics throughout northern Oregon and is an employer within the definition of 42 U.S.C. § 2000e(b).

4.    The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names. Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged. Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

5.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

6.    This Court has jurisdiction over Defendant LEGACY pursuant to 28 U.S.C. § 1331 because Plaintiffs' action arises under the laws of the United States.

## VENUE

7.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

8.      Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the counties of Multnomah and Washington and all agents, employees, or other persons working for, or in concert with, Defendant LEGACY with regard to the events giving rise to this case are located in, employed in, and/or residents of the counties of Multnomah and Washington.

## GENERAL ALLEGATIONS

9.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

10.      In August 2021 – roughly 18 months after the coronavirus ("COVID-19"), which was potentially deadly in some cases but had a survival rate exceeding 99 percent, reached the United States – the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Kate Brown, sought to limit the spread of the potentially deadly coronavirus in the state's healthcare facilities by issuing an administrative rule (the "Mandate") requiring healthcare workers statewide to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.  However, the OHA's Mandate allowed healthcare workers to seek, and the healthcare providers who employed them to grant, exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

11.      In accordance with the OHA's Mandate, LEGACY required all of its employees to be vaccinated against COVID-19 by September 30, 2021.

12.      LEGACY allowed its employees to seek religious exemptions.  Any employee who sought one had to fill out and submit a form provided by LEGACY

and submit along with the form a letter from a religious authority in the employee's faith community explaining, on the religious authority's letterhead, "how administration of the COVID-19 vaccine conflicts with bona fide religious tenets or practices of [the employee's] faith."  LEGACY also permitted employees who had no religious authority to provide a letter on their own behalf explaining their religious objections to receive a COVID-19 vaccine.

13.     Religious exemption requests submitted by LEGACY employees would be judged by an "exception work group" (the "Exception Committee" or the "Committee") that supposedly included staff from LEGACY's Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control departments.

14.     Plaintiff CANDACE QUINN ("QUINN") is, and at all times relevant herein was, a practicing Christian who worked as a registered nurse in the endoscopy department at LEGACY's Mount Hood Medical Center ("Mount Hood") in Gresham.  She also worked as a charge nurse, timekeeper, unit scheduler, and preceptor and trained new employees.  As a charge nurse, QUINN supervised staff and collaborated with other departments to meet the hospital's needs.

15.     QUINN was employed at LEGACY for 11 years.

16.     QUINN also supplemented her income by working 100 percent remotely as a Clinical Charge Capture Analyst for LEGACY.

17.     Plaintiff TAMARA L. DOBSON COTTON ("COTTON") is, and at all times relevant herein was, a practicing non-denominational Christian who worked as a respiratory care practitioner at LEGACY's Meridian Park Medical Center ("Meridian Park") in Tualatin for approximately 4½ years, starting on April 24, 2017.  Her job involved providing care to patients who were having trouble breathing and included such duties as interviewing patients, conducting tests, and treating respiratory and cardiopulmonary conditions.

18.    In addition, COTTON supplemented her income by picking up "screener shifts" in which she asked those entering Meridian Park whether they had any COVID-19 symptoms.

19.    Plaintiff CAMILLE D. HARRIS ("HARRIS") is, and at all times relevant herein was, a practicing Christian who worked as an operating room nurse in the surgical services department at Meridian Park for approximately 16 years.

20.    All Plaintiffs were qualified for their positions and had exemplary employment records.

21.    All Plaintiffs worked directly with patients.

22.    In response to its employees' concerns about the use of fetal tissue from aborted babies in the preparation of COVID-19 vaccines, LEGACY acknowledged on its website that the three manufacturers of COVID-19 vaccines then available in the United States – Pfizer, Moderna, and Johnson & Johnson – all used cells from aborted babies in the research and development of their respective vaccines.  *See* Attached **Exhibit "B"** [a true and accurate copy of the relevant page from LEGACY's website].

23.    LEGACY attempted to justify those manufacturers' actions by asserting that (1) "[f]etal cells that are used are not from recent abortions.  They come from fetal cells from the 1970s and 1980s" and (2) "all fetal cells are removed from the vaccine before" the vaccine is administered.  *See* Ex. "B."

24.    After much prayer and consideration, Plaintiffs individually determined that they could not, in good conscience in accordance with their faiths' principles, defile their bodies by letting them be injected with a COVID-19 vaccine, whether because of the vaccines' connection with abortion or otherwise. Plaintiffs thus sought from LEGACY religious exemptions from the OHA's Mandate.  *See* Attached **Exhibits "C"-"E"** [copies of the requests submitted to LEGACY by QUINN, COTTON, and HARRIS, respectively].

## VENUE

7.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

8.      Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the counties of Multnomah and Washington and all agents, employees, or other persons working for, or in concert with, Defendant LEGACY with regard to the events giving rise to this case are located in, employed in, and/or residents of the counties of Multnomah and Washington.

## GENERAL ALLEGATIONS

9.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

10.     In August 2021 – roughly 18 months after the coronavirus ("COVID-19"), which was potentially deadly in some cases but had a survival rate exceeding 99 percent, reached the United States – the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Kate Brown, sought to limit the spread of the potentially deadly coronavirus in the state's healthcare facilities by issuing an administrative rule (the "Mandate") requiring healthcare workers statewide to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.  However, the OHA's Mandate allowed healthcare workers to seek, and the healthcare providers who employed them to grant, exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

11.     In accordance with the OHA's Mandate, LEGACY required all of its employees to be vaccinated against COVID-19 by September 30, 2021.

12.     LEGACY allowed its employees to seek religious exemptions.  Any employee who sought one had to fill out and submit a form provided by LEGACY

25.    LEGACY denied religious exemptions to all three Plaintiffs.  *See* Attached **Exhibits "F"-"H"** [copies of e-mails from LEGACY to QUINN, COTTON, and HARRIS, respectively, denying their religious exemption requests].[1]  LEGACY issued each of these denials on the same two grounds: (1) lack of consistency (because the employee had allegedly received vaccines in the past) and (2) lack of specificity (because the employee had allegedly failed to state a religious belief that was against receiving a COVID-19 vaccine).

26.    All of Plaintiffs' exemption requests were processed through LEGACY's headquarters in Portland.  The e-mails denying Plaintiffs' requests were sent from LEGACY's headquarters in Portland as well.

27.    An examination of LEGACY's e-mails to each Plaintiff indicates the e-mails are virtually identical – essentially, form letters not tailored to any individual who received one.  *See* Exs. "F"-"H."  LEGACY's e-mails provided no explanation of why the Exception Committee had found that Plaintiffs had failed to demonstrate consistency regarding their religious beliefs and practices or why their religious exemption requests lacked enough specificity.  *Id.*

28.    Concerning the consistency criterion, LEGACY made no allowance for the possibility that any of its employees (1) had received a vaccine as a child but stopped receiving them as adults; (2) held religious views concerning vaccines that had evolved since previously receiving vaccines as adults; and/or (3) did not have religious objections to vaccines in general, but did have religious objections to COVID-19 vaccines on grounds that made COVID-19 vaccines distinguishable from other types of vaccines.  LEGACY also made no allowance for the Christian doctrine of repentance – i.e., turning away from past sins and toward obedience to God by refusing to commit those sins any longer.

---

[1] Some of QUINN's documents refer to her by her maiden name, Candace Welch.

29.     Concerning the specificity criterion, it is unclear how specific LEGACY's Exception Committee wanted religious objectors' statements of objection to be or what information the Committee felt was missing from Plaintiffs' exemption requests.  However, given that the Committee reportedly rejected the exemption requests of nearly 800 employees – all of whom received the same standard e-mail informing them that LEGACY had rejected their requests, and all of whose requests had been rejected on the same grounds as Plaintiffs' – what is clear is that few, if any, LEGACY employees were able to provide enough specificity to satisfy the Committee.

30.     LEGACY's assertion to the contrary in its e-mails to each of the Plaintiffs denying their religious exemption requests notwithstanding [*see* Exs. "F"-"H"], LEGACY predestined each of the Plaintiffs for unpaid leave and termination and did so not based on individualized assessments of Plaintiffs' respective religious exemption requests, but as part of a larger program against employees who sought religious exceptions.  LEGACY's Exception Committee paid little to no attention to how much or how little detail employees who sought religious exemptions included in their exemption requests – the Committee simply denied exemption requests across the board, with few, if any, exceptions.

31.     LEGACY attempted to justify the Exception Committee's blanket, across-the-board denials of religious exemption requests like Plaintiffs' by offering the lame excuse that "there is no ideal way to determine a sincerely held religious belief[.]"  LEGACY did not engage in a good-faith, interactive exploration of potential accommodations with any of its employees, including Plaintiffs, as Title VII requires, nor did it give Plaintiffs any opportunity to appeal the Committee's decisions concerning their exemption requests.

32.     Concerning consistency, LEGACY cited no evidence indicating how any of the Plaintiffs failed to meet that standard.  *See* Exs. "F"-"H."

33.    Concerning specificity, LEGACY's denials of religious exemptions on that ground lacked merit:

      a.  QUINN declared in her religious exception request that "[t]here is a moral duty to refuse the use of medical products, including certain vaccines, that are created using human cell lines derived from abortion at any stage of the vaccine's development, including the testing phase of a medical product" and that "[t]he body is a temple of the Holy Spirit and we, as Christians, are compelled to protect it from defilement."  Ex. "C."  QUINN also explained that her "beliefs concerning the sanctity of human life conflict with any requirement to inject abortion-tainted vaccinations into my body" and cited to both biblical passages and writings of Christian scholars in support of her position.  *Id.*

      b.  COTTON declared in her religious exception request that "[t]he Bible makes it clear that my body is a temple.  Taking this new vaccine/experimental gene therapy/gateway to the Mark of the Beast would grieve my Lord and my soul."  Ex. "D."  The "mark of the beast" is discussed in the Bible in Revelation 13:16-17: That passage refers to an emissary of Satan who forces all people on Earth to receive a mark containing the number 666 on their foreheads or their right hands.  Anyone who does not receive a mark, according to the passage, will be prohibiting from buying or selling goods and services.  Given that venues here in Oregon and elsewhere have required proof of vaccination against COVID-19 as a means of access to goods or services, COTTON believes the OHA's Mandate is a trial run for the scenario contemplated in the biblical passage cited *supra*.

c. Like COTTON, HARRIS asserted that "as a Christian, my body is a temple and it is my God give [sic] responsibility and requirement to protect the physical integrity of my body."  Ex. "E."

34.    After rejecting Plaintiffs' religious exemption requests, LEGACY gave Plaintiffs three options: They could (1) receive a COVID-19 vaccine, and thereby violate their sincerely held religious beliefs as a condition of remaining employed; (2) take no action and be placed on unpaid administrative leave on October 1, 2021, with termination following on October 19, 2021; or (3) provide their written resignations to their respective supervisors.

35.    Because they could not, in good conscience, receive COVID-19 vaccines, and given the substantial likelihood that they would be unable to obtain unemployment benefits if they resigned from their respective positions, Plaintiffs reluctantly, and under protest, chose the second option.  As a result, LEGACY placed them on administrative leave and subsequently fired them.

36.    Since LEGACY terminated Plaintiffs' employment:

a. QUINN has found work as a contract/travel nurse, picking up shifts at Providence Milwaukie Hospital ("Providence-Milwaukie") – which allows her to work with a religious exception – multiple times per month.  However, what she earns is not comparable to what she made working a steady 30-hour week at Mount Hood, where she earned base pay of $52.15 per hour and also received an additional 4% hourly due to having a bachelor's degree and 6% hourly when working as a charge nurse: Even granting that she earns "crisis pay" that puts her hourly wages between $78 and $91 per hour depending on what tasks she is assigned, she only works two to four shifts per month at Providence-Milwaukie, and the crisis pay could go away at any

time.  QUINN also does not receive any sick leave, vacation time, healthcare benefits, or life insurance coverage as part of her compensation from Providence-Milwaukie, as she did at LEGACY.  QUINN must now cover her own healthcare and life insurance costs out-of-pocket.  QUINN also has lost at least $6,000 in retirement benefits as well as a $2,000 bonus for having a specialty certification.

b. COTTON went 4½ months without pay before obtaining new employment at Providence Portland Medical Center ("Providence-Portland"), which allows her to work with a religious exception. She also paid $350 in out-of-pocket medical expenses; and

c. HARRIS has lost at least $75,000 per year in salary and $10,000 in retirement benefits.  Like QUINN, HARRIS is now working as a per diem/contract registered nurse who receives no health insurance, life insurance, or retirement benefits – all of which she received as part of her compensation from LEGACY.

37.    Due to LEGACY's termination of their employment, Plaintiffs have also suffered noneconomic damages as follows:

a. QUINN suffered emotional distress due not only to her firing, but to threats and bullying from a particular physician while she was still employed.  The physician told QUINN he physically wanted to hurt people like her who were unvaccinated.  QUINN's distress manifested itself physically, causing hair loss and weight loss;

b. COTTON experienced extreme anxiety and panic attacks due to the fact that LEGACY attempted to coerce her to sin against God. She takes Ativan to deal with her extreme anxiety as a result of her treatment at the hands of LEGACY; and

      c.   HARRIS experienced emotional distress – not only from experiencing bullying and harassment in the workplace for being unvaccinated, but from the loss of income due to being fired.

38.    As a condition of filing the herein lawsuit, Plaintiffs each obtained right-to-sue letters from either the Equal Employment Opportunity Commission or Oregon's Bureau of Labor & Industries.  Those letters are attached hereto as **Exhibits "I"-"K."**

39.    Attached hereto as **Exhibits "L"-"N"** are printouts from the website TimeandDate.com showing when the 90-day statute of limitations set forth in each right-to-sue letter is set to expire.  Plaintiffs included these printouts as exhibits to show that they timely filed this lawsuit in compliance with their respective letters.

### FIRST CAUSE OF ACTION:
**Violation of Title VII**
**[42 U.S.C. § 2000e-2]**
**Against Defendant LEGACY**

40.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

41.    Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

42.    The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief[.]"  42 U.S.C. § 2000e(j).

43.    For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

44.    Defendant LEGACY qualifies as an employer under Title VII and is therefore subject to Title VII's provisions.

45.     As practicing Christians, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

46.     Plaintiffs at all times relevant herein were employees within the definition set forth in 42 U.S.C. § 2000e(f).

47.     Plaintiffs each have a bona fide religious belief that prevented them from taking a COVID-19 vaccine.

48.     Plaintiffs' bona fide religious belief against taking COVID-19 vaccines conflicted with their employment-related duty to receive a COVID-19 vaccine in accordance with The OHA's Mandate, as the COVID-19 vaccines available on the market in 2021 were all made by manufacturers who used cells from aborted fetuses in the vaccines' testing and development.

49.     Plaintiffs informed their employer, Defendant LEGACY, of the conflicts between their religious beliefs and their employment-related duties.  *See* Exs. "C"-"F."

50.     Defendant LEGACY subjected Plaintiffs to discriminatory treatment by subjecting them to three adverse employment actions: (1) Threatening to place them on unpaid leave and ultimately terminating their employment if they did not receive a vaccine [*see* Exs. "G"-"J"]; (2) placing them on unpaid leave on October 1, 2021; and (3) terminating their employment on October 19, 2021.

51.     Defendant LEGACY made no attempt to accommodate Plaintiffs' sincerely held religious beliefs, nor did LEGACY make any assertion to Plaintiffs that LEGACY would incur undue hardship by accommodating their beliefs. LEGACY simply attempted to justify its denials of Plaintiffs' religious exemption requests by asserting that the Exception Committee did not find Plaintiffs' asserted beliefs to be sincerely held, even though Plaintiffs had provided the Committee evidence to the contrary.

52.     Defendant LEGACY could and should have provided reasonable accommodations for Plaintiffs' beliefs, as accommodations that would have allowed Plaintiffs to continue working while significantly limiting the likelihood of spreading COVID-19 were available.  Such accommodations included requiring Plaintiffs to:

a.  Wear power air purifying respirators, N95 or surgical masks, clean hospital-provided gowns or scrubs, hair covers, goggles, gloves, and/or shoe covers;

b.  Submit to weekly COVID-19 testing, temperature checks, and screening questions;

c.  Wash their hands or use hand sanitizer and sanitizing wipes regularly; and

d.  Engage in social distancing (six feet or more) from patients and fellow employees when possible.

53.     LEGACY offered none of these accommodations, opting to take adverse employment actions against Plaintiffs instead.

54.     Religious discrimination is truly what motivated Defendant LEGACY to get rid of Plaintiffs, any assertion LEGACY might make to the contrary notwithstanding.

55.     Based on the foregoing, Defendant LEGACY has discriminated against Plaintiff in violation of Title VII.

## SECOND CAUSE OF ACTION:
### Violation of State Law Prohibiting Religious Discrimination
### [ORS 659A.030(1)(a)]
### Against Defendant LEGACY

56.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

57.     Like Title VII, ORS 659A.030(1)(a) prohibits employers from discharging individuals from employment on the basis of the individuals' religion, as Defendant LEGACY has done here.

58.     Because Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical, Plaintiffs decline to restate the facts as set forth in their first cause of action, as those facts have already been incorporated as though fully set forth herein.

59.     Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiffs, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

60.     Under Oregon law, a jury may award up to $500,000 in noneconomic damages.  *See* ORS 31.710(1).  Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … <u>mental suffering</u>, emotional distress, … inconvenience and interference with normal and usual activities apart from gainful employment."  ORS 31.705(2)(b)

61.     Plaintiffs have endured mental suffering and emotional distress due to LEGACY's unlawful discrimination against them.  They have also suffered interference with normal and usual activities.

62.     ORS 659A.885(3) allows for punitive damages against employers such as Defendant LEGACY who violate ORS 659A.030(1)(a).  Oregon law places no cap on punitive damages.  *See Smith v. Ethicon, Inc.*, 2022 U.S. Dist. 98543 at *2 (D. Or. June 2, 2022).

63.    Based on the foregoing, in addition to violating Title VII, Defendant LEGACY has violated ORS 659A.030(1)(a).

### THIRD CAUSE OF ACTION:
**Aiding and Abetting Religious Discrimination**
**[ORS 659A.030(1)(g)]**
**Against Defendants DOES 1-50**

64.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

65.    ORS 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

66.    In their roles as members of Defendant LEGACY's Exceptions Committee, Defendants DOES 1-50 – whose identities have yet to be determined, and whom Plaintiffs intend to add as Defendants after learning their identities through discovery – acted in concert with, or gave substantial assistance to, LEGACY in unlawfully discriminate against Plaintiffs on account of Plaintiffs' respective religions.  Defendants DOES 1-50 did this knowing that it was unlawful for LEGACY, as Plaintiffs' employer, to discriminate against Plaintiffs.

67.    Because Defendant LEGACY carried out its religious discrimination against Plaintiffs with the assistance of Defendants DOES 1-50, Defendants DOES 1-50 should be held individually and personally liable for their conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants LEGACY and DOES 1-50 as follows:

### ON ALL CAUSES OF ACTION:

1.    For economic damages in an amount according to proof at trial;

2.    For non-economic damages in an amount according to proof at trial;

3.     For punitive damages in an amount according to proof at trial;

4.     For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5.     For such other and further relief as the Court may deem proper.


Dated: March 8, 2023                          PACIFIC JUSTICE INSTITUTE
                                              __/s/ RAY D. HACKE_____
                                              Ray D. Hacke
                                              Attorney for Plaintiffs
                                              CANDACE QUINN *et al.*

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a16 party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about March 8, 2023, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a), AND AIDING AND ABETTING RELIGIOUS DISCRIMINATION [ORS 659A.030(1)(g)]**

## PLEASE SEE ATTACHED SERVICE LIST

_____BY MAIL:  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

_X__BY ELECTRONIC MAIL: I caused such documents to be served on the interested parties via electronic mail and through the court's ECF website.

_____(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__(Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 8, 2023, at Salem, Oregon.

*/s/ LAUREN PEFFERLE*
Lauren Pefferle

## **SERVICE LIST**

Sophie Shaddy-Farnsworth
Attorney For Defendant
Stoel Rives LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
E-mail: sophie.shaddyfarnsworth@stoel.com

# EXHIBIT "A"



## Business Name Search

**New Search**    **Printer Friendly**              Business Entity Data                    10-31-2022
                                                                                              14:31

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 091184-15 | DNP | ACT | OREGON | 11-04-1970 | 11-04-2022 | **YES** |
| Entity Name | LEGACY HEALTH | | | | | |
| Foreign Name | | | | | | |
| Non Profit Type | PUBLIC BENEFIT | | | | | |

## Online Renewal:

[ Renew Online ]

Click here to generate and print an annual report.

**New Search**    **Printer Friendly**          Associated Names

| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | |
|---|---|---|---|---|
| Addr 1 | LEGAL SERVICES DEPARTMENT | | | |
| Addr 2 | 1919 NW LOVEJOY STREET | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| Type | AGT | REGISTERED AGENT | Start Date | 09-17-2021 | Resign Date |
|---|---|---|---|---|---|
| Name | ALEXANDER | | GLADNEY | | |
| Addr 1 | 1919 NW LOVEJOY ST | | | | |
| Addr 2 | | | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA |

| Type | MAL | MAILING ADDRESS | | |
|---|---|---|---|---|
| Addr 1 | 1919 NW LOVEJOY | | | |
| Addr 2 | | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA |

| Type | PRE | PRESIDENT | | Resign Date |
|---|---|---|---|---|
| Name | KATHRYN | | CORREIA | |

| Addr 1 | 1919 NW LOVEJOY ST | | | | | |
|--------|--------------------|---|---|---|---|---|
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97209 | | Country | UNITED STATES OF AMERICA |

| Type | SEC | SECRETARY | | | | Resign Date | |
|------|-----|-----------|---|---|---|-------------|---|
| Name | ALEXANDER | | GLADNEY | | | | |
| Addr 1 | LEGAL SERVICES DEPARTMENT | | | | | | |
| Addr 2 | 1919 NW LOVEJOY | | | | | | |
| CSZ | PORTLAND | OR | 97209 | | Country | UNITED STATES OF AMERICA | |

**New Search**     **Printer Friendly**     # Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|----------------------|-----------|-------------|------------|----------|
| LEGACY HEALTH | EN | CUR | 04-05-2010 | |
| LEGACY HEALTH SYSTEM | EN | PRE | 03-31-1989 | 04-05-2010 |
| HEALTHLINK | EN | PRE | 10-11-1985 | 03-31-1989 |
| METROPOLITAN HOSPITALS, INC. | EN | PRE | 05-19-1971 | 10-11-1985 |
| SOUTHWEST HOSPITAL | EN | PRE | 11-04-1970 | 05-19-1971 |

Please read before ordering Copies.

**New Search**     **Printer Friendly**     # Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|-----------------|--------|------------------|----------------|--------|-------------------|--------------|
| | AMENDED ANNUAL REPORT | 09-17-2021 | | FI | Agent | |
| | AMENDED ANNUAL REPORT | 10-28-2020 | | FI | Agent | |
| | RESTATED ARTICLES | 01-31-2020 | | FI | | |
| | RESTATED ARTICLES | 01-31-2020 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-25-2019 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-13-2018 | | FI | | |
| | RESTATED ARTICLES | 12-18-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-15-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-21-2016 | | FI | | |
| | RESTATED ARTICLES | 09-19-2016 | | FI | | |
| | RESTATED ARTICLES | 05-31-2016 | 06-01-2016 | FI | | |
| | AMENDED ANNUAL REPORT | 10-05-2015 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-13-2014 | | FI | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | RESTATED ARTICLES | 04-18-2014 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-16-2013 | | FI | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 09-11-2013 | | FI | Agent | |
| | REINSTATEMENT AMENDED | 03-14-2013 | | FI | | |
| | ADMINISTRATIVE DISSOLUTION | 01-04-2013 | | SYS | | |
| | AMENDED ANNUAL REPORT | 10-25-2011 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-21-2010 | | FI | | |
| | RESTATED ARTICLES | 04-05-2010 | | FI | | |
| | ARTICLES OF AMENDMENT | 04-05-2010 | | FI | Name | |
| | AMENDED ANNUAL REPORT | 11-03-2009 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-29-2008 | | FI | | |
| | AMENDED ANNUAL REPORT | 11-07-2007 | | FI | | |
| | RESTATED ARTICLES | 10-30-2007 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-20-2006 | | FI | | |
| | ANNUAL REPORT | 01-04-2006 | | FI | | |
| | RESTATED ARTICLES | 05-05-2005 | | FI | | |
| | REINSTATEMENT AMENDED | 01-27-2005 | | FI | | |
| | ADMINISTRATIVE DISSOLUTION | 12-30-2004 | | SYS | | |
| | RESTATED ARTICLES | 12-10-2003 | | FI | | |
| | ANNUAL REPORT PAYMENT | 12-10-2003 | 12-09-2003 | SYS | | |
| | ANNUAL REPORT PAYMENT | 10-17-2002 | | SYS | | |
| | ANNUAL REPORT PAYMENT | 11-02-2001 | | SYS | | |
| | STRAIGHT RENEWAL | 11-20-2000 | | FI | | |
| | NB AMENDMENT | 11-14-2000 | | FI | | |
| | AMENDED RENEWAL | 12-29-1999 | | FI | | |
| | NB AMENDMENT | 01-28-1999 | | FI | | |
| | CHANGED RENEWAL | 11-06-1998 | | FI | | |
| | AGENT/AUTH REP CHNG | 11-06-1998 | | FI | | |
| | STRAIGHT RENEWAL | 10-27-1998 | | FI | | |
| | NB AMENDMENT | 06-24-1998 | | FI | | |

| | | | | | |
|---|---|---|---|---|---|
| | MERGER | 04-16-1998 | | FI | |
| | NB AMENDMENT | 04-03-1998 | | FI | |
| | AGENT/AUTH REP CHNG | 01-30-1998 | | FI | |
| | STRAIGHT RENEWAL | 10-24-1997 | | FI | |
| | NB AMENDMENT | 02-28-1997 | | FI | |
| | STRAIGHT RENEWAL | 12-18-1996 | | FI | |
| | STRAIGHT RENEWAL | 11-03-1995 | | FI | |
| | NB AMENDMENT | 06-02-1995 | | FI | |
| | ASSOCIATED NAME CHNG | 06-02-1995 | | FI | |
| | STRAIGHT RENEWAL | 10-10-1994 | | FI | |
| | NB AMENDMENT | 12-30-1993 | | FI | |
| | AMENDED RENEWAL | 09-27-1993 | | FI | |
| | MERGER | 04-06-1993 | | FI | |
| | AMENDED RENEWAL | 10-09-1992 | | FI | |
| | NB AMENDMENT | 10-07-1992 | | FI | |
| | ASSOCIATED NAME CHNG | 10-07-1992 | | FI | |
| | AGENT/AUTH REP CHNG | 06-26-1992 | | FI | |
| | NB AMENDMENT | 06-16-1992 | | FI | |
| | ASSOCIATED NAME CHNG | 06-16-1992 | | FI | |
| | AMENDED RENEWAL | 09-26-1991 | | FI | |
| | NB AMENDMENT | 03-25-1991 | | FI | |
| | NB AMENDMENT | 02-06-1991 | | FI | |
| | MERGER | 12-21-1990 | | FI | |
| | AGENT/AUTH REP CHNG | 10-29-1990 | | FI | |
| | AMENDED RENEWAL | 10-29-1990 | | FI | |
| | NB AMENDMENT | 12-22-1989 | | FI | |
| | AMENDED RENEWAL | 11-01-1989 | | FI | |
| | CORRECTION OF ANNUAL | 05-11-1989 | | FI | |
| | NB AMENDMENT | 04-12-1989 | | FI | |
| | MERGER | 03-31-1989 | | FI | |
| | ENTITY NAME CHANGE | 03-31-1989 | | FI | |
| | ASSOCIATED NAME CHNG | 03-31-1989 | | FI | |
| | NB AMENDMENT | 03-31-1989 | | FI | |
| | NB AMENDMENT | 01-26-1989 | | FI | |
| | AMENDED RENEWAL | 10-20-1988 | | FI | |
| | AMENDED RENEWAL | 11-09-1987 | | FI | |
| | ASSOCIATED NAME | 10-19-1987 | | FI | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | CHNG | | | | | |
|  | NB AMENDMENT | 04-09-1987 | | FI | | |
| | STRAIGHT RENEWAL | 10-08-1986 | | FI | | |
| | ASSOCIATED NAME CHNG | 04-02-1986 | | FI | | |
| | STRAIGHT RENEWAL | 11-21-1985 | | FI | | |
| | RESTATED ARTICLES | 10-11-1985 | | FI | | |
| | ENTITY NAME CHANGE | 10-11-1985 | | FI | | |
|  | NC AMENDMENT | 09-30-1985 | | FI | | |
| | STRAIGHT RENEWAL | 11-29-1984 | | FI | | |
|  | NC AMENDMENT | 11-16-1984 | | FI | | |
|  | NC AMENDMENT | 09-10-1984 | | FI | | |
|  | RESTATED ARTICLES | 05-05-1983 | | FI | | |
|  | AMENDMENT | 03-21-1975 | | FI | | |
|  | AMENDMENT | 01-08-1973 | | FI | | |
|  | AMENDMENT | 05-19-1971 | | FI | | |
| | ENTITY NAME CHANGE | 05-19-1971 | | FI | | |
|  | NEW | 11-04-1970 | | FI | | |

# EXHIBIT "B"

## Legacy Health

# Top COVID-19 vaccine safety questions

Updated September 22, 2021

- Can I trust the vaccine approval process?
- Is the vaccine safe?
- Is the vaccine safe for pregnancy?
- Is the vaccine safe if I have an autoimmune disorder?
- Do I still need the vaccine if I have had COVID-19? What about natural immunity?
- Why should I get the vaccine if people who got the vaccine are still getting sick?
- What is the difference between the Pfizer, Moderna, and Johnson & Johnson (J&J) vaccines?
- How does mRNA affect my body?
- What about long term side effects?
- How is the FDA-approved Pfizer vaccine different than the EUA-approved Pfizer vaccine? What is Comirnaty?
- Do the vaccines include fetal cells?
- What if I or someone I live with recently got sick with COVID-19? When do I get my vaccine?

## Can I trust the vaccine approval process?

- Yes. Clinical studies can take a long time because it usually takes a long time to find enough volunteers and people who have the disease. We did not have that problem with COVID-19.
- Researchers were able to make the clinical trial process more efficient while keeping safety a top priority.
- Reference: Unwavering Regulatory Safeguards for COVID-19 Vaccines | Vaccination | JAMA | JAMA Network



LEGACY
H E A L T H

**Exhibit 1**

## Do the vaccines include fetal cells?

- No. The vaccines do not include any fetal cells.
- Pfizer and Moderna used fetal cells when researching the vaccines to see if the vaccines would work. Johnson & Johnson use fetal cells to prepare the vaccine, but it is purified and all fetal cells are removed from the vaccine before you get it.
- Fetal cells that are used are not from recent abortions. They come from fetal cells from the 1970s and 1980s.
- References: COVID-19 Vaccines & Fetal Cell Lines and COVID-19 Vaccines and Fetal Cells (Michigan DHHS)

## What if I or someone I live with recently got sick with COVID-19? When do I get my vaccine?

- If you had COVID-19, you can get the vaccine as soon as you are done with isolation. This is when you do not have symptoms anymore and it has been at least 10 days since your symptoms first started. Check with your doctor if you go to the hospital or if you are immunocompromised.
- If you are exposed to someone with COVID-19, you can get the vaccine as soon as you are done with quarantine. This means after 14 days without any symptoms or sooner if you got a negative COVID-19 test.
- If you got a COVID monoclonal antibody treatment (casirivimab/imdevimab, sotrovimab, or bamlanivimab/etesevimab), you should wait 90 days before you get the vaccine.
- References: When to Get the Covid Vaccine After Having Covid – Cleveland Clinic and Frequently Asked Questions about COVID-19 Vaccination | CDC and COVID-19 Quarantine and Isolation | CDC



C-1
Page 10

# EXHIBIT "C"

OFFICE OF THE DIRECTOR
Office of the State Public Health Director



# COVID-19 Vaccine Religious Exception Request Form

I am requesting an exception from the COVID-19 vaccination on the basis of a sincerely held religious belief.

| Individual's name: Candace Quinn | Date of birth: 04/07/1987 |
|---|---|
| Phone number: 503-939-1067 | |
| Employer/Organization: Legacy Health / Legacy Mt. Hood Medical Center | Job Title/Position: Registered Nurse |

## Please check the boxes below as appropriate and complete related questions:

☒ Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination

I certify the above information to be true and accurate and that I sincerely hold the religious beliefs described above.

| Signature: | Date: 08/26/2021 |
|---|---|

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

    Print document

OHA 3871 (8/25/2021)

August 26, 2021

To Whom It May Concern,

      I am writing to respectfully inform you that due to my religious beliefs, I am unable to consent to receiving any COVID vaccines and am requesting a religious exemption from the COVID 19 vaccination requirement imposed by you, my employer, Legacy Health. I request this exemption and accommodation under the Free Exercise Clause of the First Amendment to the United States Constitution based upon my sincerely held religious beliefs.

      My sincerely held religious beliefs requiring the accommodation include the following Biblical commands and principled Christian teachings:

o     There is a moral duty to refuse the use of medical products, including certain vaccines, that are created using human cells lines derived from abortion during any stage of the vaccine's development, including the testing phase of development of a medical product.

o     The body is the Temple of the Holy Spirit and we, as Christians, are compelled to protect it from defilement.

      Primarily, my beliefs regarding the sanctity of human life conflict directly with any requirement to inject abortion-tainted vaccinations into my body. The Bible teaches me about the sanctity of life, specifically that life begins at conception and that I must not endorse the killing of human life by anything I participate in (Proverbs 6:16-17). It is my understanding that all of the available COVID vaccines contain cell lines, or utilized cell lines, derived from aborted human beings in either the manufacture or testing of the vaccine. Both Pfizer and Moderna vaccines used the fetal cell line HEK 293 in the research and development phase, while the Johnson & Johnson vaccine utilized the PER.C6 fetal cell line to manufacture the vaccine. Fetal cell line HEK 293 cells are descended from tissue taken from a 1973 abortion and PER.C6 fetal cells are descended from tissue taken from a 1985 abortion. (See https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-COVID-19-vaccines-contain-aborted-fetal-cells [last visited August 25, 2021]).

      The use of abortion tainted vaccines conflicts with longstanding and well recognized anti-abortion religious teaching. As one Christian scholar has stated, "when we use vaccines or medicines which utilize cell lines originating from aborted babies, we physically benefit from the 'fruits' of one of the greatest evils of mankind — the cruel genocide of the unborn. . . . As Christians, it is our duty to bear witness to the world by not accepting these vaccines and medicines." Likewise, citing Tobit 2:21 as binding Biblical authority, Father Michael Copenhagen has stated, "the recipient [of an abortion-tainted vaccine] is an immediate participant in the commission of continuous theft of human remains obtained through deliberate killing, their desecration through exploitation and trafficking, as well as ultimate omission to respectfully bury them." It is my sincere belief that for me to benefit from the murder of innocent human life is immoral and a sin. Even if the safety and efficacy of the vaccines were certain and the danger of the disease great, I cannot in good conscience receive any of the available COVID vaccines.

      The Bible also informs us: "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own." 1 Corinthians 6:19. It further

instructs, "Therefore, since we have these promises, dear friends, let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of reverence for God." 2 Corinthians 7:1.

Because the body is the temple of the Holy Spirit, we are compelled by Scripture to follow God's law when choosing what to put into it.  As a living temple, I believe that I must protect my body, and keep it holy, and that I must not put any harmful substances into my body, nor take any action that unnecessarily risks my health. This is a belief that I observe daily in my choice of diet, strict avoidance of tobacco, alcohol, and illicit drugs, avoidance of caffeine, as well as engaging in other health practices. As a Christian protecting my body from defilement according to God's law, I invoke my religious right to refuse any vaccine which utilized abortion-derived cell lines at *any* stage of the creation or testing of the vaccine.

Finally, whereas none of the currently available COVID vaccines produces a "sterilizing immunity," meaning that vaccinated individuals can (and do) still spread COVID, failure to accommodate my request for exemption and accommodation serves no legitimate purpose.  Rather, such failure to accommodate would clearly be designed solely to deter the exercise of my religious convictions.  Since COVID vaccines only recently became available, and employers had nearly a full year to learn to operate under the threat of COVID *without* the use of vaccines, employers are already well equipped to offer reasonable accommodations without undue hardship. I have dutifully and faithfully adhered to Legacy's safety standards, including wearing recommended PPE, and feel that I can continue to do so while providing excellent quality care. I have made an effort to inform myself of the risks and benefits of receiving a COVID vaccine. I have learned that the vaccines available at this time carry risks including myocarditis, pericarditis, blood clots, severe allergic reactions, and death. I have also informed myself of the risks to myself and my community from complications of contracting the COVID virus. I believe that the COVID vaccines have not been subjected to years of rigorous research and testing and as such there are unknown risks and benefits that may not avail themselves for many years. I also understand that there are other methods of protecting against and treating COVID infections, which do not carry the same level of risk as the vaccines.

After considering the risks, benefits, alternatives, the use of aborted fetal cell lines, as well as my personal health condition, I have taken the matter to the Lord in prayer and am convicted that I should not take the vaccine and that to do so would violate my conscience.  James 1:5-6. I respectfully request an exemption from the COVID-19 Vaccination Requirement as it violates my sincerely held religious beliefs, practice, and observance.

Sincerely,

Candace Quinn

# EXHIBIT "D"



Last updated: 8/16/21

# LEGACY
## H E A L T H

## COVID-19 VACCINATION EXEMPTION REQUEST FORM

**INSTRUCTIONS:** Please complete this form for the applicable exemption you are seeking. If you have questions, please contact the Employee Health COVID Hotline at 503-415-5820 or COVID19@lhs.org.

Name: _Tamara Dobson Cotton_    Employee #: _48968_
Phone Number: _971-803-0618_    Email: _rayc116@comcast.net_
Department: _Cardiopulmonary Medicine_ Site: _LMPMC_
Employee Signature: _Tamara L Dobson Cotton_    Date: _8-29-2021_

Legacy Health requires COVID-19 vaccination sufficient to achieve a fully vaccinated status for all caregivers. Legacy Health recognizes that immunization with a safe and effective vaccine is a proven strategy to reduce COVID-19 related illness for our caregivers, patients, and community. The CDC recognizes that COVID-19 vaccines are safe and effective at preventing COVID-19 disease, especially severe illness, and death.

## ☐ Medical Exemption
Please <u>attach</u> a signed letter from your qualified medical provider, on that medical provider's letterhead, that states the medical condition they are treating and describes a valid medical contraindication per the CDC. Please ensure that the medical provider who provides the signed letter is qualified to medically assess the condition at issue.

**Contact information for Provider:**

Provider Name (printed)_____ Telephone: _____

## ☒ Bona fide Religious Exemption

Please <u>attach</u> a signed letter from a religious authority in your faith community, on that religious authority's letterhead, explaining how administration of the COVID-19 vaccine conflicts with bona fide religious tenets or practices of your faith. (Please ensure the information in the letter is specific. A general philosophical or moral objection to the vaccine will not be sufficient for Legacy Health to evaluate the request or grant an exemption.) If you don't have a religious authority, you can submit a letter explaining how administration of the COVID-19 vaccine conflicts with bona fide religious tenets or practices of your faith.

**Contact information for Religious Leader (if attaching a signed letter):**

Religious Leader Name (printed) _I AM_ _____ Telephone: _____
Position/Title: _God_ _____

Either email this form and required letter to COVID19@lhs.org, fax to 503-415-5192 or submit to the local Employee Health office.



Tamara Dobson Cotton
14155 SW Spinnaker Dr.
Beaverton, OR 97005


August 29, 2021


Legacy Employee Health
Fax:  503-415-5192


To Whom it May Concern:


I am a non-denominational Christian and am writing to request an exemption from taking the
Covid-19 vaccine as it is against my religious beliefs.  Approximately two-thousand years ago,
Jesus tore the veil.  Therefore, I do not need a religious authority other than God.

The Bible makes it clear that my body is my temple.  Taking this new vaccine/experimental gene
therapy/gateway to the Mark of the Beast, would grieve my Lord and my soul.  This evil, satanic
situation that my coworkers and I have been placed in, mandatory vaccines, has caused me
spiritual, emotional, psychological, and physical distress, which I am currently being treated for.


Sincerely,

Tamara Dobson Cotton

Tamara Dobson Cotton

# EXHIBIT "E"

OFFICE OF THE DIRECTOR
Office of the State Public Health Director



# COVID-19 Vaccine Religious Exception Request Form

**Instructions:** Please refer to the <u>Instructions for filling out the COVID-19 Religious Exception Request Form</u>. If you are requesting an exception from the COVID-19 vaccination requirement for religious reasons you must fill out this form and **submit it to your employer or other responsible person.**

Fax    503 415-5192

## DO NOT SEND THIS FORM TO THE OREGON HEALTH AUTHORITY.

I am requesting an exception from the COVID-19 vaccination on the basis of a sincerely held religious belief.

| Individual's name: Camille Harris | Date of birth: 01-01-74 |
|---|---|
| Phone number: 503-453-5848 | |
| Employer/Organization: Legacy Meridian Park | Job Title/Position: OR RN |

## Please check the boxes below as appropriate and complete related questions:

☒ Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination  I already sent in my Religious exemption Request.

I certify the above information to be true and accurate and that I sincerely hold the religious beliefs described above.

| Signature: Harris RN | Date: 09-22-21 |
|---|---|

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

1 of 1                                   OHA 3871 (9/01/2021)

 Gmail                                                                    Camille Harris <gcamilleh@gmail.com>

---

# Vaccination Exemption
6 messages

---

**Camille Harris** <gcamilleh@gmail.com>                                                    Mon, Aug 30, 2021 at 12:23 PM
To: COVID19@lhs.org
Bcc: gcamilleh@gmail.com

> Camille Harris
> Employee #  29858
> Phone# 503-453-5848
> Email gcamilleh@gmail.com
> Surgical department, Meridian Park Hospital
>
> Re: assertion of religious exemption of the Covid 19 vaccine.
>
> Dear Legacy Health,
> I hereby assert my right to religious exemption from vaccination.
> As a Christian I sincerely believe my body is a temple and it is my God given responsibility and requirement for me to
> protect the physical integrity of my body.
> Your respectfulness to this matter is greatly appreciated.
>
> Sincerely, Camille Harris RN
>
> 08-30-21

---

**Camille Harris** <gcamilleh@gmail.com>                                                    Fri, Sep 3, 2021 at 11:31 AM
To: ciera.dube@gmail.com

> Sent from my iPhone
>
> Begin forwarded message:
>
> > **From:** Camille Harris <gcamilleh@gmail.com>
> > **Date:** August 30, 2021 at 12:23:18 PM PDT
> > **To:** COVID19@lhs.org
> > **Subject: Vaccination Exemption**
> >
> > Camille Harris
> > [Quoted text hidden]

---

**COVID19** <COVID19@lhs.org>                                                              Fri, Sep 17, 2021 at 9:53 AM
To: Camille Harris <gcamilleh@gmail.com>
Cc: "Harris, Camille D :LMP Surgery Services" <CDHARRIS@lhs.org>

We have received the attached COVID19 Vaccination Exception submission. After review, the submission has been
determined more information is needed to proceed.

Review Overview:
• Submission indicates a missing religious and/or medical exemption form

Next Steps:

# EXHIBIT "F"

**From:** COVID-19 Vaccine Exception Workgroup <legacycovidvaccine@lhs.org>
**Sent:** Monday, September 27, 2021 11:12 AM
**To:** Quinn, Candace D :LMH Endoscopy <CDQUINN@LHS.ORG>
**Subject:** Decision on your exception request

Thank you for submitting your exception request for the COVID-19 vaccine policy.

For your privacy, your name was removed from your exception request before it was reviewed by the exception work group. No details from your request, or the review process, have been shared with leaders or others.

The exception work group, which includes staff from Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control, believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:
- Consistency (have you recently received other vaccines)
- Specificity (your religious belief is clearly stated, and that religious belief is specifically against receiving the COVID-19 vaccine)

**Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria.**

Please know that the Exception Committee carefully reviewed and applied a consistent standard to every request. This was a detailed process intended to provide a full and thorough review.

This decision on your request provides a few days for you to consider your next steps as our Sept. 30 vaccine requirement deadline nears. Please see the instructions below from Human Resources regarding your options.

Sincerely,

COVID-19 Vaccine Exception Workgroup

**Exception Request Denial Instructions**

Because your exception is denied, you have three options:
1. Take action to keep your job by getting vaccinated as soon as possible. Use MyHealth to schedule a vaccine appointment, email EmployeeHealth@lhs.org to request one, or find one in the community. If you have vaccine questions or need help scheduling an appointment, call 503-415-4800. Please note that hotline staff are clinical experts and cannot help you with your exception request. If you've been vaccinated and need to provide documentation, email a picture of your vaccine card to covid19@lhs.org.
2. Take no action and be placed on administrative leave on Oct. 1, with termination following as soon as Oct. 19.
3. Resign your position by alerting your manager in writing.

For more information on the vaccine requirement, please visit the COVID-19 intranet's vaccine page.

# EXHIBIT "G"

Inquiry # 551-2022-05670

**Legacy Covid Vaccine <legacycovidvaccine@lhs.org>**                                    10/7/2021 3:00 PM

# Legacy Health - Exception Request

To rayc116@comcast.net <rayc116@comcast.net>

Tammy, thank you for submitting your request for religious exception for the COVID-19 vaccine policy. For your privacy, your name was removed from your exception request before it was reviewed by the exception work group.  No details from your request, or the review process, have been shared with leaders or others.

The exception work group, which includes staff from Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control, believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:

- Consistency (have you have recently received other vaccines)
- Specificity (your religious belief is clearly stated, and that religious belief is specifically *against* receiving the COVID-19 vaccine)

Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria. Please know that the Exception Committee carefully reviewed and applied a consistent standard to every request. This was a detailed process intended to provide a full and thorough review.

This decision on your request provides a few days for you to consider your next steps as our Sept. 30 vaccine requirement deadline nears. Please see the instructions below from Human Resources regarding your options.

Sincerely,

COVID-19 Vaccine Exception Workgroup

<u>Exception Request Denial Instructions</u>

Because your exception is denied, you have three options:

- Take action to keep your job by getting vaccinated as soon as possible. Call Employee Health at 503-415-5300 or use MyHealth to schedule a vaccine appointment or find one in the community.  If you've been vaccinated and need to provide documentation, email a picture of your vaccine card to <u>covid19@lhs.org</u>.

- Quit your job by resigning from your position

- Take no action and be placed on administrative leave on Oct. 1, with termination following as soon as Oct. 19.

For more information on the vaccine requirement, please visit the COVID-19 intranet's <u>vaccine page</u>.



# EXHIBIT "H"

 Gmail

**Tony Harris <gtonyh@gmail.com>**

## Fwd: Decision on your exception request

Camille Harris <gcamilleh@gmail.com>                    Mon, Sep 27, 2021 at 11:57 AM
To: Tony Harris <gtonyh@gmail.com>, Diana Harris <dianaharris99@gmail.com>

Sent from my iPhone

Begin forwarded message:

**From:** COVID-19 Vaccine Exception Workgroup <legacycovidvaccine@lhs.org>
**Date:** September 27, 2021 at 11:12:51 AM PDT
**To:** gcamilleh@gmail.com
**Subject: Decision on your exception request**
**Reply-To:** legacycovidvaccine@lhs.org

Thank you for submitting your exception request for the COVID-19 vaccine policy.

For your privacy, your name was removed from your exception request before it was reviewed by the exception work group. No details from your request, or the review process, have been shared with leaders or others.

The exception work group, which includes staff from Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control, believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:

- Consistency (have you have recently received other vaccines)
- Specificity (your religious belief is clearly stated, and that religious belief is specifically against receiving the COVID-19 vaccine)

**Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria.**

Please know that the Exception Committee carefully reviewed and applied a consistent standard to every request. This was a detailed process intended to provide a full and thorough review.

This decision on your request provides a few days for you to consider your next steps as our Sept. 30 vaccine requirement deadline nears. Please see the instructions below from Human Resources regarding your options.

Sincerely,

COVID-19 Vaccine Exception Workgroup

**Exception Request Denial Instructions**

Because your exception is denied, you have three options:

1. Take action to keep your job by getting vaccinated as soon as possible. Use MyHealth to schedule a vaccine appointment, email EmployeeHealth@lhs.org to request one, or find one in the community. If you have vaccine questions or need help scheduling an appointment, call 503-415-4800. Please note that hotline staff are clinical experts and cannot help you with your exception request. If you've been vaccinated and need to provide documentation, email a picture of your vaccine card to covid19@lhs.org.
2. Take no action and be placed on administrative leave on Oct. 1, with termination following as soon as Oct. 19.
3. Resign your position by alerting your manager in writing.

For more information on the vaccine requirement, please visit the COVID-19 intranet's vaccine page.



Legacy Health | 1919 NW Lovejoy, Portland, OR 97209

Unsubscribe gcamilleh@gmail.com

Update Profile | Constant Contact Data Notice

Sent by legacycovidvaccine@lhs.org

# EXHIBIT "I"



CHR

January 13, 2023

CANDACE QUINN
12697 ANITA PL
OREGON CITY, OR 97045

RE:    Complainant:    Candace Quinn
       Respondent:     Legacy Health
       Case #:         EEEMRG220304-10260
       EEOC #:         38D-2022-00308

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note:  If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires one year from the date of the alleged violation.***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

jl

**Date of Mailing**: January 13, 2023

cc:    Caroline Hoffman Janzen, Complainant's Attorney

# EXHIBIT "J"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 12/22/2022

**To:** Mrs. Tamara L. Dobson Cotton
14155 SW Spinnaker Dr.
Beaverton, OR 97005
Charge No: 551-2022-05670

EEOC Representative and email:   Bryne Moore
Investigator
bryne.moore@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 551-2022-05670.

On Behalf of the Commission:

December 22, 2022
Date

for

Elizabeth M. Cannon, Director
Seattle Field Office

Cc:
Sophie Shaddy-Farnsworth
Stoel Rives LLP
760 SW 9th Ave, Ste. 3000
Portland, OR 97205

Please retain this notice for your records.

# EXHIBIT "K"



January 20, 2023


CAMILLE HARRIS
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:    Complainant:   Camille Harris
       Respondent:    Legacy Meridian Park Hospital
       Case #:        EEEMRG220304-10259
       EEOC #:        38D-2022-00307

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.


Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit


jl

**Date of Mailing**: January 20, 2023

cc:    Caroline Hoffman Janzen, Complainant's Attorney

   

# EXHIBIT "L"

JAN 2:

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**     **Add Days**     **Workdays**     **Add Workdays**     **Weekday**     **Week №**

From **Friday, January 13, 2023**
Added 90 days

## Result: Thursday, April 13, 2023

### Calendar showing period from January 13, 2023 to April 13, 2023

| January 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 18 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

| February 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 28 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | | | | |

| March 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 31 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| April 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 13 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

= Start date (Jan 13, 2023)     = Final result date (Apr 13, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

# EXHIBIT "M"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days    Add Days    Workdays    Add Workdays    Weekday    Week №

From **Thursday, December 22, 2022**
Added 90 days

## Result: Wednesday, March 22, 2023

### Calendar showing period from December 22, 2022 to March 22, 2023

| December 2022 | | | | | | |
|---|---|---|---|---|---|---|
| 9 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

| January 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 31 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

| February 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 28 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | | | | |

| March 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 22 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

☐ = Start date (Dec 22, 2022)    ☐ = Final result date (Mar 22, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

Advertising

# EXHIBIT "N"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days     Add Days     Workdays     Add Workdays     Weekday     Week №

From **Friday, January 20, 2023**
Added 90 days

## Result: Thursday, April 20, 2023

### Calendar showing period from January 20, 2023 to April 20, 2023

**January 2023**
11 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

**February 2023**
28 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | | | | |

**March 2023**
31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

**April 2023**
20 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

☐ = Start date (Jan 20, 2023)   ☐ = Final result date (Apr 20, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

Advertising



© Time and Date AS 1995–2023